# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

JOHN S.,[1]

     Plaintiff,

                                                 **Case No. 3:20-cv-00281**

    v.                                     **Magistrate Judge Norah McCann King**

COMMISSIONER OF SOCIAL SECURITY,[2]

     Defendant.

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff John S. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications. This matter is now before the Court, with the consent of the parties*, see Joint Consent of the Parties*, ECF No. 5, on *Plaintiff's Statement of Errors*, ECF No. 12, *Defendant's Memorandum in Opposition*, ECF No. 13, *Plaintiff's Reply*, ECF No. 14, and the *Certified Administrative Record*, ECF No. 9. After careful consideration of the entire record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court grants *Plaintiff's Statement of Errors,* reverses the Commissioner's

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* S.D. Ohio General Order 22-01.
[2] Kilolo Kijakazi is the Acting Commissioner of Social Security. *See* Fed. R. Civ. P. 25(d).

decision, and remands the matter for consideration of whether Plaintiff is entitled to a closed period of disability.

## I.     PROCEDURAL HISTORY

Plaintiff protectively filed applications for disability insurance benefits and supplemental security income on February 8, 2017, alleging that he has been disabled since March 31, 2014, based on a number of physical and mental impairments. R. 282-88.[3] Plaintiff later amended the alleged disability onset date to February 8, 2017. R. 72.[4] The applications were denied initially and upon reconsideration and Plaintiff sought a *de novo* hearing before an administrative law judge. R. 217-18. Administrative Law Judge ("ALJ") Laura Roberts held a hearing on March 19, 2019, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 61-104. In a decision dated June 21, 2019, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from February 8, 2017, Plaintiff's amended alleged disability onset date, through the date of that decision. R. 15-28. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on May 21, 2020. R. 1-6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On March 23, 2022, the case was reassigned to the undersigned. ECF No. 16. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.     Standard of Review

In reviewing applications for Social Security disability benefits, "[t]he Commissioner's

---

[3] References to pages in the Certified Administrative Record will be cited as "R. __," using the pagination that appears in the Certified Administrative Record.

[4] The ALJ found that Plaintiff did not satisfy the special earnings requirements for purposes of disability insurance benefits and was last insured for Medicare coverage as a Medicare-qualified government employee on September 30, 2011. R. 17-18. *See* 20 C.F.R. § 404.1018b. Plaintiff does not dispute this finding.

conclusion [of non-disability] will be affirmed absent a determination that the ALJ failed to

apply the correct legal standard or made fact findings unsupported by substantial evidence in the

record." *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010); *see also* 42 U.S.C. §

405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by

substantial evidence, shall be conclusive . . . ."). The United States Supreme Court has explained

the substantial evidence standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative
> record and asks whether it contains sufficien[t] evidence to support the agency's
> factual determinations. And whatever the meaning of substantial in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial evidence, this
> Court has said, is more than a mere scintilla. It means – and means only – such
> relevant evidence as a reasonable mind might accept as adequate to support a
> conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks

omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal

quotations omitted). In addition, "'[w]here substantial evidence supports the [Commissioner's]

determination, it is conclusive, even if substantial evidence also supports the opposite

conclusion.'" *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v.

Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)); *see also Blakley v. Comm'r of Soc. Sec.*, 581 F.3d

399, 406 (6th  Cir. 2009) ("Therefore, if substantial evidence supports the ALJ's decision, this

Court defers to that finding 'even if there is substantial evidence in the record that would have

supported an opposite conclusion.'") (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.

1997)). "Yet, even if supported by substantial evidence, 'a decision of the Commissioner will not

be upheld where the SSA fails to follow its own regulations and where that error prejudices a

claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r Soc.

Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d

742, 746 (6th Cir. 2007)).

    **B.**     **Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof through step four; at step five, the burden shifts to the Commissioner." *Rabbers*, 582 F.3d at 652 (*citing Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e),

(f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III. ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 46 years old on his amended alleged disability onset date of February 8, 2017. *See* R. 27. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since that date. R. 18.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: neuralgia of the left pudendal nerve entrapment, neuropathy, pain disorder, major depressive disorder, and generalized anxiety disorder. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. *Id*.

At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work subject to various additional limitations:

> The claimant can occasionally climb ramps and stairs. He can never crouch, crawl, kneel, climb ladders, ropes, or scaffolds, or be exposed to unprotected heights or vibrations. The claimant cannot perform production rate work or work with strict production quotas. He can understand, remember, and carry out simple tasks with simple instructions in a routine work setting with only occasional changes in work processes. The claimant will be off task up to 10% of the workday.

5

R. 20. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a barber and beauty supply representative; academic counselor; public relations representative; college faculty member; admissions counselor; and admissions evaluator. R. 26.

At step five, the ALJ relied on the testimony of the vocational expert to find that a significant number of jobs—*e.g.*, jobs as film touch up inspector, table worker, and document preparer—existed in the national economy and could be performed by Plaintiff. R. 28. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act for purposes of Medicare coverage or for supplemental security income. R. 28.[5]

Plaintiff disagrees with the ALJ's findings at step four,[6] arguing that the ALJ erred in her evaluation of the medical opinions and evidence. He asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Statement of Errors,* ECF No. 12; *Plaintiff's Reply Brief*, ECF No. 14. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief,* ECF No. 13.

## IV.   RELEVANT EVIDENCE

Plaintiff testified that he began experiencing symptoms of left pudendal nerve entrapment in 2013. R. 81. The condition causes pain on his "pelvic rim," down his left leg to his knee, and in his left groin and sacral areas.  R. 82. The pain, which is constant, worsens with urination and

---

[5] The ALJ referred at one point in the decision to an alleged disability onset date of "November 2, 2006." R. 28. This appears to be a harmless typographical error.

[6] Although Plaintiff's Statement of Errors contends in passing that the ALJ also erred at step five of the sequential evaluation process, Plaintiff does not actually substantively address that contention. Accordingly, the Court will not address this contention.

bowel movements and sometimes results in incontinence. R. 83. He has been prescribed a cane, which he uses 40% of the time. R. 86. He can sit for 10 to 15 minutes before the condition "start[s] to affect" him. R. 89. He can stand for 10 minutes, and his treating surgeon has limited him to lifting no more than three pounds. *Id*. He takes medication for depression and anxiety, but the medication does not help. R. 84. He has difficulty being around other people. R. 91. He sees a therapist weekly and those sessions are helpful. R. 90. He does not believe that he could perform a job in which he sits most of the day, because his "pain is so intense, [he] can't concentrate." R. 92.

Plaintiff underwent pudendal nerve blocks in 2014. R 445. In March 2015, Plaintiff consulted Aaron Filler, M.D., Ph.D., who diagnosed complex multiple element pudendal entrapment involving irritation of the S2 and S3 spinal nerves on the left. R. 449. That same month, Dr. Filler performed a resection of the piriformis muscle, neuroplasty of the pudendal nerve, and neuroplasty/partial neurolysis of the nerve to the obturator internus, R. 453, following which Dr. Filler observed that Plaintiff was "doing extremely well" and had "great reduction of his usual symptoms." R. 471. In August 2015, Dr. Filler noted that Plaintiff had "done quite well with regard to the vast majority of his original symptoms. He is off most of his medications. He feels that he is really back to his normal self." R. 595. *See also* R. 687 ("He did quite well with that surgery and ultimately had a complete relief of his symptoms.")

In January 2017, Plaintiff reported to Dr. Filler that "he had been doing generally well, maintaining most of his improvements," but had experienced a recurrence of symptoms in November 2016. R. 592, 594*. In April 2017, Dr. Filler reported to the state agency that Plaintiff's gait was normal and he did not require an ambulatory aid. R. 604. He had a normal ability to do fine and gross manipulation, and had no evidence of a speech impairment. *Id.*

However, Plaintiff's functioning in the area of "self-care" was seriously limited "due to pain." *Id.*

In May 2017, Aivars Vitols, D.O., conducted a consultative physical examination of Plaintiff at the request of the state agency. R. 622-30. Plaintiff appeared "quite uncomfortable" as a consequence of severe, constant pain which was aggravated by moving; "standing is out of the question." R. 626. Plaintiff reported that he had "totally recover[ed]" following the 2015 surgery and his pain had resolved, but that the pain had recurred and had persisted following an incident in November 2016 that had caused him to fall. *Id.* Plaintiff reported that he could stand no more than 10 minutes, could sit for 15 minutes with constant shift of position, could not negotiate stairs, and seldom left his house. R. 627. On clinical examination, Plaintiff could rise from a seated position with extreme difficulty; his station was very unsteady and motion of the lumbar spine was significantly restricted due to an inability to bear full weight on the left leg and poor balance and associated left groin pain. R. 628. He could not perform heel and toe stand. *Id.* Reflexes were intact and knees and ankles were stable with unrestricted motion. *Id.* According to Dr. Vitols, Plaintiff could stand or walk for only very brief periods of time. R. 629. Sitting was difficult due to severe groin and buttock pain. Plaintiff had full use of his upper extremities. "The claimant's overall physical functional capacity level is at the sedentary level at this time." *Id.*

In June 2017, William Bolz, M.D., reviewed the record on behalf of the state agency and opined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently. R. 123. He could stand and/or walk for a total of 4 hours and sit for a total of about 6 hours in an 8-hour workday. *Id.* He was unlimited in his ability to push and pull. *Id.* He could occasionally climb ramps and stairs, could never climb ladders, ropes or scaffolds, could frequently balance, and could occasionally stoop, kneel, crouch and crawl. R. 123-24. He should avoid even

8

moderate exposure to hazards such as machinery and heights. R. 124. In October 2017, Elizabeth Das, M.D., also reviewed the record on behalf of the state agency and concurred in Dr. Bolz's opinions. R. 172-73.

Following his physical examination of Plaintiff in June 2017, Dr. Filler diagnosed a recurrent entrapment of the pudendal nerve, R. 687, and recommended re-operative neuroplasty, R. 688. However, it was not until August 2018 that Dr. Filler performed that surgery. R. 804. After that surgery, Plaintiff did "quite well with very good progress and relief of symptoms," until falling at work and experiencing a significant recurrence of symptoms. R. 802. *See also* R. 1490. In December 2018, Dr. Filler prescribed medication to "hopefully restore the benefits he initially obtained." *Id. See also* R. 1471. However, that same month, Dr. Filler reported on a "Mental Impairment Questionnaire" that Plaintiff suffers pelvic pain, as a result of which he would be off task 10% of an average typical work week, and would be absent from work more than three times a month. R. 821. Asked to assess Plaintiff's ability to engage in work-related activities from a mental perspective, Dr. Filler opined that Plaintiff had no or only mild limitation of function, except that Plaintiff had "extreme" limitation of function in most areas involving concentration, persistence, or maintaining pace.  R. 822-23.

During a telephone consult with Dr. Filler in January 2019, Plaintiff reported that "his pain is being controlled well" with his medication. R. 1470. In February 2019, Dr. Filler completed a "Medical Assessment of Ability to Do Work-Related Activities (Physical)," although he also remarked, "We are a neurosurgery practice. We do not assess physical activity limitations." R. 1092. According to Dr. Filler, Plaintiff's limited hip rotation limits his balance and carrying. R. 1088. Plaintiff could lift and carry 3 pounds occasionally, could stand and walk for a total of 2 hours in a workday, for 15 minutes at a time. R. 1089. He could never sit. *Id.* He

could not sit or stand because of severe sciatic notch pain; he could occasionally climb and balance but could never crawl, crouch, or kneel. R. 1090. Pushing and pulling of large heavy objects would affect the area of buttock pain. "It is difficult for him to bend and stand for long periods of time." *Id.* He "can't carry/lift heavy objects or sit." R. 1091. Dr. Filler opined that Plaintiff has the RFC to perform sedentary work on a sustained basis. *Id.*

In March 2019, Dr. Filler reported to Plaintiff's counsel that Plaintiff's symptoms "have been progressively worsening." R. 1490.

> He is not able to sit, stand or walk for more than 10 to 15 minutes and therefore he is not able to work at this time. He also suffers greatly from his nerve pain and this is also why it is not possible for him to carry out his usual work and activities at this time. It is unlikely that surgery will be required in the future but he should have additional evaluations.
> Being off [from] work has him in great mental distress and he would need an evaluation for that with ongoing treatment.

*Id.*

Pamela Werner, M.D., is Plaintiff's treating internist. At a March 2017 office visit, Dr. Werner noted that symptoms of Plaintiff's moderate major depression were "under reasonable control" with his then-current regimen. R. 617. At a July 2017 follow-up visit for chronic depression and anxiety, Dr. Werner commented that Plaintiff "is actually doing quite well currently." R. 695. In March 2018, Dr. Werner opined that Plaintiff should avoid lifting. R. 812. In January 2019, Dr. Werner prescribed--at Plaintiff's request--a cane for ambulation and a handicap privileges tag, but noted that Plaintiff's disabling conditions were "temporary." R. 1472. According to Dr. Werner, Plaintiff "cannot sit for extended periods of time and is unable to walk long distances." R. 1473. His pain worsens his depression and anxiety. *Id.*

## V.    DISCUSSION

Plaintiff raises a number of arguments, including the arguments that the ALJ erred in her evaluation of the medical opinions and evidence and in failing to consider whether Plaintiff qualified for a closed period of disability extending from February 2017, based on the recurrence of his left pudendal nerve entrapment,[7] and August 2018, when he underwent a second surgical procedure in connection with that condition. The Court concludes that the matter must be remanded for consideration of the latter claim.

A claimant may be found to be disabled within the meaning of the Social Security Act if it is determined that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Although the Social Security Act "itself does not provide for a closed period of benefits. . . it is clear that such a closed period of benefits may be awarded." *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). "[A] 'closed period of disability' necessarily means that while the claimant may not be entitled to disability on a permanent basis, he is entitled to disability for some period not less than 12 months." *Sizemore v. Saul*, No. CV 20-273-DLB, 2021 WL 4432476, at *7 (E.D. Ky. Sept. 27, 2021).

In the case presently before the Court, the ALJ found that Plaintiff had made a good recovery following his 2015 surgery, and that finding finds ample support in Dr. Filler's own progress notes and reports. *See, e.g.*, R. 471 (noting that Plaintiff was "doing extremely well" and had "great reduction of his usual symptoms"); R. 595 (noting in August 2015 that Plaintiff

---

[7] As noted above, the recurrence of the nerve entrapment actually occurred in November 2016. However, Plaintiff's claim to benefits is limited to the date on which he filed his claim for Supplemental Security Income.

had "done quite well with regard to the vast majority of his original symptoms. He is off most of

his medications. He feels that he is really back to his normal self"); R. 687 ("He did quite well

with that surgery and ultimately had a complete relief of his symptoms"). The record also

contains evidence that Plaintiff made a good recovery following his second surgery in August

2018. *See, e.g*., R. 802 (noting that, following Plaintiff's second surgery, he had done "quite well

with very good progress and relief of symptoms"); R. 1470 (Plaintiff reported that "his pain is

being controlled well" with medication). However, the ALJ failed to expressly consider whether

Plaintiff was disabled during the 18-month period extending from February 2017, based on the

recurrence of the condition and its attendant symptoms, and August 2018, when he underwent

the second surgery. It was during that period of time that Dr. Vitols, the consultative examiner,

examined Plaintiff at the request of the state agency and found that Plaintiff appeared to be

"quite uncomfortable" as a consequence of severe, constant pain. R. 626. On clinical

examination, Dr. Vitols found that Plaintiff had extreme difficulty in rising from a seated

position; his station was very unsteady and motion of his lumbar spine was significantly

restricted due to an inability to bear full weight on the left leg and poor balance and associated

left groin pain. R. 628. Plaintiff could not perform heel and toe stand. *Id*. In Dr. Vitols' opinion,

Plaintiff could stand or walk for only very brief periods of time and pain rendered sitting

difficult. R. 629.

In her decision, the ALJ assigned "significant weight" to the opinions of state agency

physicians Drs. Bolz and Das:

> The undersigned gives these opinions significant weight, as they are supported by
> articulated rationale based upon their review of the record, including Dr. Filler's progress
> notes, and they are consistent with the evidence of record. More specifically, the
> consultants' opinions are consistent with the MRI imaging indicating complex multiple
> element pudendal entrapment and the claimant's surgical history. The opinions are also
> consistent with the claimant's noted improvement following the two surgical procedures.

> However, due to the additional evidence supplied following the consultant's review, including the claimant's testimony and recurrence of symptoms, the undersigned has limited the claimant further than opined by Dr. Bolz and Dr. Das.

R. 24 (citations to record omitted). The ALJ accorded "partial weight" to the opinions of Dr.

Vitols, the consultative examiner:

> The undersigned gives these opinions partial weight, as they are supported by Dr. Vitols' own findings but are only partially consistent with the evidence of record. In particular, the radiographic evidence and surgical history support limitations on the claimant's ability to sit, stand, and walk, but the claimant's testimony that his medication helps along with the noted improvement from the surgical intervention and physical therapy indicate that the limitations are not as severe as opined. Additionally, Dr. Vitols did not specify the extent of the limitations on the claimant's ability to sit, stand, or use his upper extremities.

R. 25. (citations to record omitted). The ALJ accorded "partial weight" to Dr. Filler's opinions of

Plaintiff's physical limitations:

> The undersigned gives these opinions partial weight, as they are internally inconsistent and inconsistent with the record as a whole. Specifically, the determination of whether the claimant can work is one that is reserved to the Commissioner. Nonetheless, Dr. Filler's opinions regarding the finding that the claimant's exertional and postural abilities are limited is consistent with the radiographic evidence, physical therapy findings, and surgical history. Yet, the extent of the limitations, such as no sitting and walking and standing for no more than fifteen minutes, is inconsistent with the record, as Dr. Filler himself notes the claimant's improvement following the surgical intervention and the previous resolution of a recurrence of symptoms with proper treatment. Moreover, Dr. Filler has not examined the patient since immediately following the second surgery in August of 2018, so he must rely on the claimant's subjective reports. Thus, the undersigned gives Dr. Filler's opinions only partial weight.

*Id.* (citations to record omitted).

The ALJ based her assessment of these opinions, at least in part, on Plaintiff's good response to the two surgical procedures performed by Dr. Filler. Nowhere, however, did the ALJ consider Plaintiff's impairments during the 18-month period of time between February 2017 and August 2018, during which he suffered a recurrence of the nerve entrapment and its attendant symptoms. The ALJ accorded "significant weight" to the opinions of the state agency reviewing

13

physicians, but Dr. Bolz rendered his opinion before Dr. Filler had diagnosed the recurrent entrapment of the pudendal nerve, R. 687, for which he recommended re-operative neuroplasty, R. 688.

Under these circumstances, the Court concludes that the decision of the Commissioner must be reversed and the matter must be remanded for consideration of a closed period of disability, an issue that the ALJ wholly failed to consider. It may be that, upon remand, the Commissioner will determine that Plaintiff does not qualify for a closed period of disability; however, the evaluation of the evidence relevant to that determination must be left in the first instance to the Commissioner.

## VI.      CONCLUSION

For these reasons, the Court **GRANTS** *Plaintiff's Statement of Errors*, ECF No. 12, **REVERSES** the decision of the Commissioner, and **REMANDS** the matter for further proceedings consistent with this Opinion and Order.

The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** pursuant to Sentence 4 of 42 U.S.C. § 405(g).


Date:  July 26, 2022                                    *s/Norah McCann King*
                                                NORAH McCANN KING
                                                UNITED STATES MAGISTRATE JUDGE